UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| JACKIE LEE FISHER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:14-CV-1666 JD |
| | ) | |
| CORRECT CARE SOLUTIONS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

While detained in the Elkhart County jail, plaintiff Jackie Lee Fisher slipped on a water leak in his cell and hit his head. He was promptly tended to by a nurse, and a doctor gave treatment directions by phone. The following week, he sought additional treatment for continuing symptoms, but refused to be treated unless the medical staff first agreed to waive the $15 co-payment, which they did not. Several days later, Mr. Fisher relented and sought treatment notwithstanding the co-payment. He was evaluated by a nurse, who again consulted with the doctor by phone, and he saw the doctor in person the following week. Mr. Fisher alleges in this action that the delay in seeing the doctor in person and the failure to waive the co-payment caused him to endure unnecessary pain during this period, in violation of his constitutional rights. The defendants—the doctor, a nurse, and the company that provides medical services at the jail—have now moved for summary judgment, arguing that there is no evidence that they were deliberately indifferent to Mr. Fisher's serious medical needs. The Court agrees, and grants the motion for summary judgment.

### I. FACTUAL BACKGROUND

On April 26, 2014, plaintiff Jackie Lee Fisher was a pretrial detainee in the Elkhart County jail. Early in the morning, Mr. Fisher slipped on a water leak in his cell and fell and hit

his head. Another inmate in his cell used the call box to notify jail staff that Mr. Fisher had fallen and was hurt. Jail staff came to the cell and escorted Mr. Fisher to the medical unit, where he was evaluated by nurses on duty. Mr. Fisher had a cut on his head that was two inches long, but not deep. He also reported a ringing and tenderness in his ears. His vital signs were generally normal, though, and he also performed well on tests designed to detect neurological injuries.

At 6:32 a.m., about an hour after the fall, a nurse called and spoke to Dr. John Foster, the doctor employed by Correct Care Solutions to provide treatment at the jail. The nurse told Dr. Foster about Mr. Fisher's injury, and informed him that Mr. Fisher was complaining of nausea, blurred vision, and a pounding headache. She also provided Dr. Foster with the neurological test results. Dr. Foster ordered an x-ray of Mr. Fisher's skull, and also ordered that Mr. Fisher receive Tylenol 975 mg., twice a day for two days. That medication was in addition to an existing prescription Mr. Fisher had for Mobic, a mild pain-reliever and anti-inflammatory drug. Dr. Foster concluded based on the information provided to him that Mr. Fisher was stable from a neurological perspective and did not need to be sent to the hospital. Mr. Fisher states that he was also vomiting at this time, but he does not dispute that Dr. Foster was not given that information. The x-ray was taken that same morning and came back normal, showing no skull fracture. Either that night or the following day, a nurse called Dr. Foster and informed him that Mr. Fisher was fine, had no pain, no blurred vision, and was ready to go back to his dorm, so Dr. Foster released him back to the general population.

Several days later, on April 30, Mr. Fisher submitted a request to see the medical department. An appointment was scheduled for the following day, but when he was called for his appointment, Mr. Fisher refused to go. Nurse Daniel Kinnear, the nursing supervisor, asked to speak with Mr. Fisher about why he was refusing treatment. Mr. Fisher alleges that medical staff

had told him he would have to pay a triage fee of $15 in order to be seen. He believed that the fee was contrary to Correct Care's policy, though, and also that his injury was the jail's fault because of the leak, so he refused to be triaged without being assured that he would not be charged. Nurse Kinnear encouraged Mr. Fisher to be triaged and advised him that he could be seen by the medical staff at any time, but Mr. Fisher refused to be seen, believing that he would be wrongfully charged for the treatment.

On May 6, Mr. Fisher finally agreed to be seen despite the $15 charge. He was examined on May 8 by Nurse Kinnear. At that time, Mr. Fisher's vital signs were normal and the cut on his head was healing nicely, but he complained of headaches and neck pain since his fall. Nurse Kinnear then called Dr. Foster and discussed Mr. Fisher's complaints. Dr. Foster ordered that Mr. Fisher receive Tylenol 975 mg. for seven days. Nurse Kinnear also referred Mr. Fisher for an appointment with Dr. Foster, which took place on May 15. On that date, Dr. Foster examined Mr. Fisher in person for the first time since the accident. Mr. Fisher reported a headache that would come and go, and also reported that he was still very tender in his lower neck and upper back. Dr. Foster prescribed Flexeril, a muscle relaxant. He also ordered a cervical spine x-ray, which was taken the next day and came back normal. Mr. Fisher continued to seek and receive treatment for over the next year, but only focuses in this action on his treatment through May 15, so the Court need not discuss the rest of his treatment history.

Mr. Fisher filed a *pro se* complaint in this case on June 18, 2014. Pursuant to 28 U.S.C. § 1915A, the Court screened the complaint, and granted Mr. Fisher leave to proceed on a deliberate indifference claim against eleven individuals involved in his medical care, and against Correct Care Solutions, the private company that contracted to provide medical services at the jail and that employed Dr. Foster and Nurse Kinnear. The Court also granted Mr. Fisher's motion

to recruit counsel, so he is now represented.[1] Mr. Fisher later stipulated to the dismissal of five of the individual defendants. In addition, following the remaining defendants' motion for summary judgment, Mr. Fisher stipulated to the dismissal of four more of the defendants, conceding that the record could not support his claims against them. Accordingly, Mr. Fisher's claims remain pending against Dr. Foster, Nurse Kinnear, and Correct Care, each of which have moved for summary judgment.[2]

## II. STANDARD OF REVIEW

Summary judgment is proper when the movant shows that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one identified by the substantive law as affecting the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" exists with respect to any material fact when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Where a factual record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial, and summary judgment should be granted. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *Bank of Ariz. v. Cities Servs. Co.*, 391 U.S. 253, 289 (1968)). In determining whether a genuine issue of material fact exists, this Court must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable

---

[1] The Court thanks Ms. Nemeth for her willingness to represent Mr. Fisher, and for ably discharging her duties.

[2] The defendants' "Statement of Material Facts Not in Dispute" is 40 pages long, which reflects an unduly expansive view of the term "material." In addition, the argument portion of the defendants' brief does not contain any citations to the record or to the statement of facts. Needless to say, the Court should not have to cross-reference the defendants' arguments against a 40-page statement of facts to locate where in the record their arguments are supported.

4

inferences in that party's favor. *Jackson v. Kotter*, 541 F.3d 688, 697 (7th Cir. 2008); *King v. Preferred Tech. Grp.*, 166 F.3d 887, 890 (7th Cir. 1999).

## III. DISCUSSION

Mr. Fisher argues that Dr. Foster, Nurse Kinnear, and Correct Care violated his constitutional rights by delaying his treatment and by improperly charging him for that treatment. At the time of these events, Mr. Fisher was a pre-trial detainee at the jail. "Although the Eighth Amendment applies only to convicted persons, pretrial detainees . . . are entitled to the same basic protections under the Fourteenth Amendment's due process clause. Accordingly, [courts] apply the same legal standards to deliberate indifference claims brought under the Eighth or Fourteenth Amendment." *Minix v. Canarecci*, 597 F.3d 824, 831 (7th Cir. 2010). A constitutional claim based on inadequate medical care contains two elements: "(1) the prisoner suffered an objectively serious harm that presented a substantial risk to his safety, and (2) the defendants were deliberately indifferent to that risk." *Id.*; *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc).

The defendants do not contest the first element for these purposes, but focus on the second element. That element requires a dual showing that the defendant (1) had subjective knowledge of a risk to the inmate's health, and (2) intentionally disregarded that risk. *Thomas v. Cook Cty. Sheriff's Dep't*, 604 F.3d 293 (7th Cir. 2010); *Minix*, 597 F.3d at 831. "For a medical professional to be liable for deliberate indifference to an inmate's medical needs, he must make a decision that represents 'such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment.'" *Jackson*, 541 F.3d at 697 (quoting *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008)). The Court considers Mr. Fisher's claim against each defendant in turn.

5

### A. Dr. Foster

Mr. Fisher first argues that Dr. Foster was deliberately indifferent to his serious medical needs. Dr. Foster was called early in the morning on April 26, 2014, shortly after Mr. Fisher's fall. The nurse relayed Mr. Fisher's condition and vital signs. Based on the information he received, Dr. Foster ruled out any life-threatening head injury, so he ordered Tylenol 975 mg. twice a day for two days, and also ordered an x-ray of Mr. Fisher's skull. In addition, Mr. Fisher already had an active prescription for Mobic, a mild pain relieve and anti-inflammatory drug. The x-ray was performed that same morning and came back normal. Dr. Foster received an update by phone that evening or the next day from a nurse, who advised him that Mr. Fisher was fine, had no pain, and no blurred vision. Accordingly, Dr. Foster released Mr. Fisher to return to the general population. Dr. Foster's next encounter with Mr. Fisher was a phone call from Nurse Kinnear on May 8, after Mr. Fisher's examination by Nurse Kinnear. Nurse Kinnear advised that Mr. Fisher reported headaches and neck pain since his fall, so Dr. Foster ordered Tylenol 975 mg. for seven days. Finally, on May 15, Dr. Foster examined Mr. Fisher in person. Mr. Fisher reported an ongoing headache that would come and go, and also reported that his lower neck and upper back was still tender. Accordingly, Dr. Foster prescribed Flexeril, a muscle relaxant, and ordered an x-ray, which showed no acute injury.

Mr. Fisher does not point to any evidence showing that the treatment Dr. Foster provided during this period was deficient in light of the information known to Dr. Foster, much less that it represented so substantial a departure from accepted professional judgment as to demonstrate that he actually did not base his decision on such a judgment. Rather, his complaint is that, after receiving the phone call about Mr. Fisher's accident on April 26, "Dr. Foster never took it upon himself to follow up with [Mr.] Fisher when he was next in the jail to ensure that [Mr. Fisher] was recovered." [DE 96 p. 15]. Perhaps an unusually attentive doctor would have sought out Mr.

6

Fisher to ensure he had recovered, but the constitution does not require doctors to go above and beyond in that manner. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) (holding that a prisoner "is not entitled to demand specific care" or "to the best care possible," but only "to reasonable measures to meet a substantial risk of serious harm"). Rather, to sustain a claim of deliberate indifference, Mr. Fisher would have to show that Dr. Foster had subjective knowledge of a substantial risk to his health, and that Dr. Foster intentionally disregarded that risk by failing to follow up with him.

There is no evidence of that. After Mr. Fisher's accident, Dr. Foster ordered Tylenol for two days, which was in addition to Mr. Fisher's ongoing prescription for a pain reliever and anti-inflammatory drug. Before those two days were up, Dr. Foster was told by a nurse that Mr. Fisher was doing well and was ready to go back to general population, and all of the objective tests were normal, so there is no way to conclude that Dr. Foster had subjective knowledge of a substantial risk to Mr. Fisher's health that required following up. Likewise, when Dr. Foster was contacted about Mr. Fisher on May 8, he again ordered Tylenol for Mr. Fisher, and saw Mr. Fisher in person before that prescription expired. Again, Mr. Fisher has offered no basis for concluding that Dr. Foster knew based on the information available to him that Mr. Fisher needed to be seen sooner than that, or that he would suffer unnecessary pain in the interim given the medication he ordered.

In arguing to the contrary, Mr. Fisher relies on cases where the defendants either delayed providing any care at all or denied the plaintiff medication that had already been prescribed. On each occasion Dr. Foster was contacted about Mr. Fisher, though, Dr. Foster did order treatment for Mr. Fisher. Thus, Mr. Fisher's complaint boils down to a disagreement with the type of treatment provided. Without evidence that the treatment departed so substantially from accepted

professional standards as to demonstrate that Dr. Foster was not actually relying on such a judgment, this claim must fail. *Jackson*, 541 F.3d at 698 ("What we have here is not deliberate indifference to a serious medical need, but a deliberate decision by a doctor to treat a medical need in a particular manner."); *Sain*, 512 F.3d at 894–95 ("A medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances."); *Edwards v. Snyder*, 478 F.3d 827, 831 (7th Cir. 2007) ("[A] plaintiff's receipt of *some* medical care does not automatically defeat a claim of deliberate indifference *if* a fact finder could infer the treatment was so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate a medical condition." (second emphasis added)). Accordingly, the Court grants the motion for summary judgment as to Dr. Foster.

**B.     Nurse Kinnear**

Mr. Fisher next asserts a claim against Nurse Kinnear. Mr. Fisher first argues that when he requested follow-up medical care several days after his fall, Nurse Kinnear refused to waive the co-payment, which Mr. Fisher believed he should not have had to pay. Mr. Fisher argues that this delayed his treatment, as he refused to be treated without being assured that he would not be charged for the treatment. This argument is a non-starter, though, as "the Eighth Amendment does not compel prison administrators to provide cost-free medical services to inmates who are able to contribute to the cost of their care." *Poole v. Isaacs*, 703 F.3d 1024, 1026 (7th Cir. 2012). Thus, "it is not deliberate indifference for prison medical professionals to insist that inmates who are financially able tender a required co-payment before receiving care." *Hightower v. Godinez*, 524 F. App'x 294, 296 (7th Cir. 2013). Mr. Fisher does not claim that he was unable to pay the co-payment. His argument is only that Nurse Kinnear refused to ensure that he would not be charged. [DE 96 p. 17]. But because the constitution does not entitle him to cost-free medical

8

services, Mr. Fisher cannot state a claim for deliberate indifference based on his own refusal to accept treatment he would have to pay for. *Poole*, 703 F.3d at 1027 ("[The plaintiff] had sufficient funds in his trust fund account but opted to refuse treatment rather than part with his money. Even though he was in pain until he received treatment, the delay in receiving care was of his own making."); *Evans v. Heidorn*, 556 F. App'x 493, 493–94 (7th Cir. 2014) (dismissing a deliberate indifference claim as frivolous where the plaintiff cancelled his own doctor's appointments after learning that the co-payments would not be waived, even though he had the ability to pay them).

Mr. Fisher also argues that Nurse Kinnear improperly delayed setting his appointment with Dr. Foster after evaluating him on May 8, 2014, as he did not see Dr. Foster until a week later, on May 15. Even attributing this delay to Nurse Kinnear, though, there is no evidence that he intentionally disregarded a substantial risk to Mr. Fisher, as would be required to support a deliberate indifference claim. Nurse Kinnear did not allow Mr. Fisher to go entirely without care during that week. Rather, on the same day that he evaluated Mr. Fisher, Nurse Kinnear called and spoke to Dr. Foster, who ordered Tylenol for Mr. Fisher. There is no evidence that Nurse Kinnear should have known that this medication (on top of Mr. Fisher's existing prescription for Modic) was inadequate to treat Mr. Fisher's complaints of headaches and neck pain, or that there was an urgency for him to see Dr. Foster in person. Accordingly, Mr. Fisher cannot sustain a claim for deliberate indifference against Nurse Kinnear, either, so the Court grants the motion for summary judgment as to Nurse Kinnear.

**C.     Correct Care Solutions**

Finally, Mr. Fisher asserts a claim against Correct Care, a private entity that contracted to provide medical care at the jail. To hold such an entity liable under § 1983, Mr. Fisher would have to show that Correct Care maintained a policy or custom that caused a constitutional injury.

9

*Glisson v. Ind. Dept. of Corr.*, 849 F.3d 372, 378–79 (7th Cir. 2017) (en banc). Mr. Fisher argues that Correct Care has such a policy because its "employees have a widespread practice of charging inmates for services that are considered 'non-chargeable services.'" [DE 96 p. 19]. For the reasons just discussed, though, that policy (assuming there is such a policy, which Correct Care denies) would not result in any constitutional injury, as the constitution does not guarantee cost-free medical services to inmates who are able to contribute to the cost of their care. *Poole*, 703 F.3d at 1026; *Hightower*, 524 F. App'x at 296. Mr. Fisher does not allege that he was unable to pay the charge, or that Correct Care has a policy of refusing treatment to such inmates,[3] only that Correct Care is imposing the charges incorrectly. A complaint that Correct Care is violating state law or county policy by imposing such a charge is a matter of state law, though, and cannot support a claim under § 1983. *Poole*, 703 F.3d at 1027 ("[The plaintiff] urge[s] that he should have been given the benefit of one of those exemptions [to the co-payments]: the one for a follow-up visit ordered by a physician. But that is just a state-law question that cannot be pursued under § 1983."); *Hightower*, 524 F. App'x at 296 (similar). Accordingly, the Court grants the motion for summary judgment as to Correct Care.

## IV. CONCLUSION

The Court GRANTS the defendants' motion for summary judgment. [DE 87]. As this order disposes of all of Mr. Fisher's remaining claims, the Clerk is DIRECTED to enter judgment.

---

[3] The evidence shows that Correct Care employees do not require payment prior to providing treatment, and that they are not even aware of whether inmates have the ability to pay. Rather, they provide treatment and complete the inmates' medical records, after which jail staff members charge the inmates' accounts.

10

SO ORDERED.

ENTERED: May 17, 2017

                                                        /s/ JON E. DEGUILIO
                                       Judge
                                       United States District Court